IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN M. PIERCE, SR., )
)
Plaintiff )
)
v. ) 13CV158
)
UNIVERSAL STEEL OF NORTH )
CAROLINA, LLC, )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendant Universal Steel of North Carolina's ("Universal Steel") motion to dismiss Plaintiff's retaliation claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 27.) Plaintiff John M. Pierce, Sr. filed a response in opposition to Defendant's motion (Docket Entry 30) and the matter is ripe for disposition. For the following reasons, it is recommended that the court grant Defendant's motion to dismiss.

I. BACKGROUND

Plaintiff filed this action against Universal Steel on February 25, 2013, alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.[1] (Docket Entry 2.) On July 4, 2013, Plaintiff filed an amended complaint. (*See generally* Am. Compl., Docket Entry 26.) Plaintiff alleges he was hired by Triad Steel in 1996 and continued employment with Universal Steel after its acquisition of Triad in 2006. (*Id.* ¶¶ 10,

---

[1] Richard Roth, Plaintiff's supervisor, was originally named as a defendant as well. Roth was dismissed as a party by a stipulation of dismissal on June 14, 2013. (Docket Entry 20.)

11.) He was employed as a Burn Table Operator and occasionally performed tasks as a Shear Operator. (*Id.* ¶¶ 12-13.) Plaintiff was terminated by Defendant in December 2011. (*Id.* ¶ 47.)

Plaintiff, an African-American, alleges that at the time of his termination he was being paid eleven dollars and eighty-six cents ($11.86) per hour. (*Id.* ¶ 15.) He contends that one white employee who was hired after Plaintiff to perform "many of the same tasks" was "paid approximately fourteen dollars per hour," and that another white male who worked a different job was paid "a higher hourly wage" than Plaintiff. (*Id.* ¶¶ 18-21.)

Plaintiff further alleges that Richard Roth was hired by Defendant as Production Manager in February 2011. (*Id.* ¶ 27.) Plaintiff alleges that he was warned by the previous Production Manager that Roth "did not like Blacks and Guatemalans" and that throughout the course of Roth's tenure he made "derogatory, stereotypical, and bigoted remarks to [Plaintiff] disparaging non-white employees," incidents which occurred, on average once or twice a week. (*Id.* ¶¶ 28-30.) Plaintiff alleges that he brought his "concerns to management on multiple occasions" (*id.* ¶ 39) and that his complaints led to his eventual termination. (*Id.* ¶ 64.)

Plaintiff alleges that in October 2011 he was informed by Roth that Plaintiff and seven other employees were being laid off. (*Id.* ¶ 40.) Six of the laid-off employees were white, while two were African-American, including Plaintiff. (*Id.*) In November 2011, several of the laid-off employees were called back to work; however neither of the African-American employees was asked to return. (*Id.* ¶¶ 41-42.) When Plaintiff contacted Roth about not being hired back, Roth told him his position was being outsourced. (*Id.* ¶ 44.) On

or about December 15, 2011, Plaintiff received a letter stating that his employment with the Defendant was being terminated. (*Id.* ¶ 46.) The other African-American employee was also terminated. (*Id.* ¶ 47.) Plaintiff alleges that since his dismissal, Defendant has hired several new white employees to replace him. (*Id.* ¶ 45.)

Attached to the complaint is a copy of the Charge of Discrimination Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") on March 5, 2012. (Docket Entry 26-1.) In this charge, Plaintiff states that he believed that he was discriminated against based on his race—African-American—and retaliated against for complaining about racial discrimination in violation of Title VII. (*Id.*)

## II. DISCUSSION

*Rule 12(b)(6)*

A defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim is granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to be "plausible on its face," the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. The plaintiff does not need to demonstrate in a complaint that the right to relief is probable, but the complaint must advance the plaintiff's claim "across the line from conceivable to plausible." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief

*Ashcrof v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contest surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When deciding a motion to dismiss, a court should assume the truth of all facts, however the courts are not bound by the "legal conclusion drawn from the facts." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss under Rule 12(b)(6) must still comply with the Federal Rules of Civil Procedure. Under Rule 8(a)(2) a complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rest." *Twombly*, 550 U.S. at 555. Employment discrimination claims do not require a heightened pleading standard. *Id.* at 570. However, the plaintiff in an employment discrimination case is still required to plead facts sufficient to state all the elements of his claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).

*Analysis*

In his third cause of action, Plaintiff asserts a claim for retaliation pursuant to Title VII. (Am. Compl. ¶¶ 60-64, Docket Entry 26.) Specifically, Plaintiff alleges that Roth's racial harassment amounted to retaliation against Plaintiff for his "reports regarding racial discrimination in employee treatment and pay." (*Id.*) Title VII provides that it is unlawful

4

for an employer to discriminate against any of his employees or applicants for employment . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In order to state a *prima facie* case of retaliation under Title VII, an employee must show that (1) he engaged in protected activity; (2) the employer took an adverse action against him; and (3) there was a causal connection between the protected activity and the asserted adverse employment action. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employer for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (internal citations omitted). A plaintiff alleging a retaliation claim must plead facts that plausibly show an adverse action taken by defendant in response to the plaintiff asserting rights protected by Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The standard for what qualifies as an adverse employment action for a retaliation claim is less onerous than for a discrimination claim. *See id.* at 67 (concluding that Title VII's anti-retaliation provision is not coterminous with Title VII's substantive discrimination provision).

In its motion to dismiss, Defendant contends that Plaintiff has failed to state a claim based on retaliatory harassment because he has not demonstrated an adverse employment

action and he has not sufficiently alleged a causal connection between any alleged protected activity and the alleged racial harassment or his termination.

Plaintiff's complaint, even liberally construed, does not state a claim for retaliation under Title VII. In his complaint, Plaintiff alleges that the harassment he suffered at the job should be considered an adverse employment action. Plaintiff alleges that he engaged in a legally protected activity by reporting to Defendant racially discriminatory actions and comments made by Roth. After reporting these actions, Roth continued to harass him and Plaintiff was eventually laid-off. Plaintiff contends that Defendant should be held liable because Defendant did not respond to Plaintiff's complaints about Roth's actions and because the supervisor was acting within the scope of his position of manager when engaging in the retaliatory behavior.

The standard for determining whether mere harassment rises to the level of an adverse action was set forth by the Supreme Court in *Burlington*, 548 U.S. 53. In *Burlington*, the plaintiff was placed on a 37-day suspension, without pay, which was considered a materially adverse change in the terms and conditions of her employment. *Id.* at 73. The Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id* at 68 (internal citation omitted). As noted by the court in *Burlington*, the objective standard is context-specific. *Id.* at 69.

Plaintiff here alleges that he was subjected to verbal harassment for a number of months. Even if this court were to assume a causal connection, the facts alleged by Plaintiff

do not rise to the level that would dissuade a reasonable worker in the same way as would, for example, a suspension without pay or exclusion from staff meetings. While the plaintiff in *Burlington* was faced with loss of income, Plaintiff in the present case only had to deal with continued harassment, which—while not slight—is something he had previously dealt with and complained about. The harassment alleged by Plaintiff simply does not qualify as an adverse employment action for the purposes of a Title VII retaliation claim.

Plaintiff alleges that he first complained of wage disparity in March 2006, shortly after Universal Steel purchased Triad Steel. Roth, the supervisor who Plaintiff alleges harassed him, was not hired until February 2011. Plaintiff does not allege that he made any complaints to Defendant about pay or assignment disparity between 2006 and 2011. Plaintiff has alleged no facts which make it plausible that Roth knew of the alleged protected activity which took place five years before he was hired. Moreover, while Plaintiff alleges he made several complaints about the harassment by Roth after 2011, Plaintiff's treatment or status as an employee never changed until he was laid off. Indeed, Plaintiff's allegations do not make a causal connection between Roth's "constant barrage" of harassment and Plaintiff's complaints to management.

Plaintiff also contends that his termination was in retaliation for his "repeated reporting" of Roth's discriminatory actions. (Am. Compl. ¶ 64.) However, Plaintiff has not alleged any facts to support this claim. Plaintiff was temporarily laid off in October 2011, and was not terminated until December 2011. Plaintiff does not allege that he engaged in any protected activity during this two-month period. Ordinarily, there must be "some degree of temporal proximity [between an employer's knowledge of an employee's protected

activity and an adverse action against that employee] to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). The lapse in time between Plaintiff's alleged complaints and his termination thus tends to negate any causal link between the two events.[2]

While Plaintiff has alleged facts sufficient to state claims for racial discrimination under Title VII, none of Plaintiff's allegations meet the specificity required to adequately allege retaliation under Title VII.

### III. CONCLUSION

For the foregoing reasons, this court finds that Plaintiff has failed to state a claim upon which relief can be granted as to his third cause of action for retaliation. Therefore, **IT IS RECOMMENDED** that Defendant's motion to dismiss be GRANTED and Plaintiff's claim for retaliation be **DISMISSED WITH PREJUDICE**.

/s/ Joe L. Webster<br>
Joe L. Webster<br>
United States Magistrate Judge

Durham, North Carolina
January 13, 2014

---

[2] Plaintiff contends that another African-American employee was fired; however Plaintiff does not allege that this employee engaged in any protected activity, lending credence to the inference that Plaintiff's termination was not retaliatory, but rather part of a general lay-off.

8